### In the Matter of the Honorable Harry L. SAUCE, III, Judge of Hamilton County Court.

#### No. 29S00–9002–JD–153.

Supreme Court of Indiana.

Oct. 25, 1990.

---

Dennis Edwin Zahn, James Hugh Voyles, Jr., Indianapolis, for respondent.

Bruce A. Kotzan, Counsel, Meg W. Babcock, Staff Atty., Indiana Com'n on Judicial Qualifications, Indianapolis, for The Indiana Com'n on Judicial Qualifications.

## JUDICIAL DISCIPLINE

### PER CURIAM.

The Indiana Commission on Judicial Qualifications (Commission) and the Respondent, the Honorable Harry L. Sauce, III, Judge of the Hamilton County Court, have entered into and now tender for this Court's approval, a Statement of Circumstances and Conditional Agreement for Discipline. The agreement emanates from a Notice of the Institution of Formal Proceedings and Statement of Charges and an Amended Notice of the Institution of Formal Proceedings and Statement of Charges under the authority of Article 7, Section 4 of the Indiana Constitution, which gives this Court jurisdiction over the discipline, suspension, and removal of all judges and lawyers in Indiana.

On February 26, 1990, charges were filed by the Commission which charges were amended on April 25, 1990, alleging that the Respondent, while serving as Judge of the Hamilton County Court, engaged in willful misconduct in office, conduct prejudicial to the administration of justice that brings the judicial office into disrepute, and conduct in violation of the Code of Professional Conduct and the Code of Judicial Conduct.

The facts in this case are not in dispute and are stated in the Conditional Agreement. We summarize those facts as follows:

1. In August, 1989, Respondent was a member of the bar of the State of Indiana and was the duly elected judge of the Hamilton County Court and continues in that capacity as of the date of this opinion.

2. In 1983, Respondent's marriage to Pamela Sauce, now Pamela Smith, was dissolved and Pamela Smith was awarded custody of their then nine (9) year old son.

3. In August, 1989, the son was staying with Respondent pursuant to visitation arrangements, but was scheduled to return to his mother's residence to begin school.

4. Because the son had indicated an interest in living with Respondent, there had been discussion between Pamela and Respondent. Pamela preferred Pike High School and Respondent preferred Hamilton Heights. Pamela would not agree to Hamilton Heights, but would agree to Carmel where she taught and where her mother lived.

5. Upon investigation Respondent discovered that the son could not enroll in Carmel based upon his grandmother's residence.

6. Pamela would not agree to enrollment in Respondent's district.

7. At no time did Pamela agree to or discuss a change in custody.

8. Respondent told Pamela that he would go to court if necessary to get the son enrolled in the Hamilton County school.

9. On August 18, 1989, Respondent called Pamela Smith's house and arranged to meet with Pamela and her husband to discuss the son's enrollment and desire to live with the Respondent.

10. Also on August 18, 1989, Respondent had personally visited the Honorable Ronald Drury, Judge of the Boone Circuit Court, and obtained

an *ex parte* order granting temporary custody of the son to Respondent, which order set the matter for further hearing on September 12, 1989.

11. Respondent did not inform Pamela or her husband of his intention to obtain a court order or of the fact that he obtained the order despite talking with them on August 18, 1989, once before the order was obtained and once after it was obtained.

12. When Pamela and her husband met with Respondent on August 20, 1989, he presented the emergency order to them.

13. On or about August 20, 1989, Attorney David McNamar entered his appearance on behalf of Pamela Smith, and obtained a change of judge and an Order Vacating Temporary Custody on August 24, 1989.

14. In response thereto, Respondent stated to David Smith, Pamela's husband, words to the effect of, "I will nut him for an *ex parte* communication. I will serve their nuts up like beef stew. Your lawyer won't get away with this because I will nut him too when this is over. I'm going to f ... him up real bad if at all possible. I'm going to f ... him up just like he's trying to f ... up my kid."

From the above agreed and undisputed facts, we find that the Respondent engaged in the charged misconduct. Respondent's conduct in obtaining the temporary change in custody through *ex parte* communication with the judge having jurisdiction of the dissolution case constituted willful misconduct in office and conduct prejudicial to the administration of justice which brought the judicial office into disrepute. IC 33–2.1–6–4. In addition, Respondent violated the Rules of Professional Conduct; specifically, Prof.Cond.R. 3.5, in that he communicated *ex parte* to the judge having jurisdiction of the dissolution case, which denied Pamela Smith her right to notice and the opportunity to be heard; and Prof.Cond.R. 8.4(a),

(d), and (f), in that he violated the Rules of Conduct and engaged in conduct prejudicial to the administration of justice.

Further Respondent violated the Code of Judicial Conduct, specifically, Canon 1, in that he failed to observe the high standards of conduct so that the integrity and independence of the judiciary would be preserved; and Canon 2(A) in that he failed to conduct himself in a manner that promoted public confidence in the integrity and impartiality of the judiciary.

With regard to the Respondent's off-color and outrageous comments implying he would retaliate against Pamela's attorney, Respondent violated Canon 1 of the Code of Judicial Conduct in that he failed to observe high standards of conduct in such a way that the integrity of the judiciary was not preserved. Respondent also violated Canon 2(A) in that he failed to avoid the appearance of impropriety and did not conduct himself in a manner that promoted public confidence in the integrity of the judiciary. Again this conduct also constituted willful misconduct in office and conduct prejudicial to the administration of justice bringing the judicial office into disrepute.

Conduct such as exhibited by Respondent cannot be tolerated by society or this Court. Judges are entrusted with the fair administration of our judicial system. For a judge to improperly obtain an order and to make threats against the attorney of his opponent in a personal case destroys the public's confidence in our judicial system. It was highly unethical for Respondent to use his position as a judge to gain an unfair advantage in his personal child custody case. Rules of law must apply equally to all citizens. Just because a citizen in a case happens to be a judge should not affect the outcome of a case or the way orders get issued.

Prior to announcing our decision as to whether the Conditional Agreement for Discipline will be accepted, we note that the Commission and the Respondent state the following facts in mitigation with regard to Respondent's misconduct:

Respondent believed that an emergency existed because {son} had expressed his desire to continue staying at Respondent's residence, the parties disagreed as to which school he should attend, and {son} had been erroneously enrolled in the Carmel–Clay school system. Although Pamela Smith would not agree to a change of legal custody, she had expressed a willingness to accommodate the son's desire to continue staying with Respondent as the school year began.

Respondent is both personally and professionally sorry for any appearance of impropriety he created in the eyes of the public or his colleagues by his conduct. The Respondent has publicly apologized for the "off color" language he used in his conversation with David Smith, and regrets that his fifteen years of service to the Hamilton County community has been tarnished by this domestic matter.

The parties agree that an appropriate sanction for the misconduct here is a public reprimand, and that if imposed, the public reprimand should foreclose any further disciplinary action against Respondent as a lawyer or a judge for the conduct which formed the basis of this action.

In light of the foregoing facts and finding of misconduct, this Court concludes that the agreed discipline, a public reprimand, should be and is hereby accepted. The fact that the Respondent will not be re-elected to office for the term beginning January 1, 1991, played a role in this Court's decision to accept only a public reprimand.

Accordingly, Respondent, Harry L. Sauce, III, Judge of the Hamilton County Court, is hereby REPRIMANDED for his misconduct in this case. This opinion shall be published in the Northeastern Reporter.